UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID M. TROTMAN,

           Plaintiff,

    -v-

JEFFREY MCCOY, Deputy
Commissioner, New York State
Department of Corrections and
Community Supervision, CHRISTINA
OLNEY, Nutritional Food Services
Director, New York State Department of
Corrections and Community Supervision,
M. ANTONIK, Mess Hall Director, Five
Points Correctional Facility, individually
and in their official capacities,

           Defendants.

_____

20-CV-06996 CJS
DECISION and ORDER

## INTRODUCTION

*Pro se* Plaintiff, David M. Trotman, Jr. ("Plaintiff"), formerly a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action pursuant to 42 U.S.C. § 1983, alleging that Jeffrey McCoy ("McCoy"), Christine Olney ("Olney"), and M. Antonik ("Antonik"), who were all employed by DOCCS, violated his rights under the First Amendment when they served him a diet that did not conform with his Rastafarian religious beliefs. Specifically, he claimed that rather than being served an Ital diet,[1] he was served a Kosher diet that

_____

[1] "The Ital diet purportedly symbolizes "a belief in life and an avoidance of symbols of death. Individual dietary practices vary among Rastafarian individuals and sects, both inside and outside prison. To name but a few variations of the Ital diet, generally Rastafarians do not eat meat and pork, and some do not eat fish or dairy products. Some Rastafarians refuse to eat vegetables that have been cooked for more than a

contained animal products, in violation of his religious beliefs.  Now before the Court is a motion (ECF No. 25) by Defendants for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Defendants primarily contend that this action is completely barred by the doctrines of *res judicata* and collateral estoppel, since the instant action is duplicative of a prior action filed by Plaintiff, which this Court dismissed with prejudice on the merits.  Alternatively, Olney and Antonik contend that they are entitled to partial judgment on the pleadings, since Plaintiff's Amended Complaint fails to state an actionable claim against them.  For the reasons discussed below, the Court agrees that the action is barred as against McCoy, and that the Amended Complaint fails to allege personal involvement by Olney or Antonik.  Therefore, Defendants' motion for judgment on the pleadings is granted in all respects and this action is dismissed in its entirety.

BACKGROUND

On November 18, 2019, Plaintiff filed his first lawsuit in this Court, 6:19-CV-6876-CJS, *Trotman v. Riley, et al*.  The Complaint alleged that the defendants were violating Plaintiff's "religious freedom pertaining to his diet which is Ital adhering to Rastafarian dietary guidelines, no animal products."  In addition to seeking money damages, the Complaint demanded, *inter alia*, that DOCCS provide Plaintiff "a non-dairy vegan diet in accordance to an Ital diet (kosher sealed products like almond milk, soy milk, peanut butter hummus)."  The Complaint indicated that Plaintiff had filed inmate grievances concerning the matter at Five Points Correctional Facility ("Five Points") and Gouverneur

---

few minutes, while other Rastafarians will eat only food that they have prepared themselves."  *Rossi v. Stevens*, 04 Civ. 1836 (CM)(LMS), 2005 WL 8146896, at * 15 (S.D.N.Y. May 2, 2005) (internal quotation marks and citation omitted).

Correctional Facility ("Gouverneur").   The defendants named in the Complaint were McCoy, DOCCS "Chairman" Allen Riley ("Riley"), DOCCS Commissioner Anthony Annucci ("Annucci"), "Deputy Superintendent of Programs at Five Points," and "Mess Hall Director at Five Points."

On March 3, 2020, the Court issued an Order, granting Plaintiff leave to proceed *in forma pauperis*, and screening his Complaint pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A(a).   The Court indicated that it liberally construed the Complaint as alleging a First Amendment freedom-of-religion claim under Section 1983 and a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), 1(b)(1).   The Court found that the Complaint failed to state a claim under either Section 1983 or RLUIPA, observing that, "Plaintiff alleges nothing more [than] that he complained about not being provided an Ital diet in conformance with his Rastafarian beliefs."   The Court noted that in addition to failing to state a claim under either statute, the Complaint also failed to allege the personal involvement of the named defendants in the alleged violations.   The Court indicated that the action would be dismissed unless Plaintiff filed an Amended Complaint that cured those deficiencies.

On April 6, 2020, Plaintiff filed an Amended Complaint (ECF No. 8) that reiterated his earlier claim, namely, that he was receiving "animal products even though he is Rastafarian and has requested an Ital diet plan for religious purposes."   The Amended Complaint named as defendants Riley, Annucci, and McCoy.

However, on June 8, 2020, the Court issued an Order dismissing the action with prejudice, pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A.  In pertinent part, the Order stated:

> A liberal reading of the Amended Complaint, assumed to be true, tells the following story.  Plaintiff adheres to Rastafarian Dietary Guidelines, which prohibit animal products.  He alleges that despite his request to be given an Ital or nonvegan diet in conformance with his religious beliefs, he continues to receive meals made with animal products [such as] eggs, dairy, poultry and beef.  . . .  Upon review of Plaintiff's Amended Complaint, the Court finds that Plaintiff has failed to cure [the previously identified] pleading defects.  In his Amended Complaint, Plaintiff alleges nothing more than that he complained about not being provided an Ital diet in conformance with his Rastafarian beliefs.  Indeed, Plaintiff provides no new or additional substantive allegations to support any alleged constitutional violation.  Accordingly, the Amended Complaint . . . is dismissed with prejudice for failure to state a claim upon which relief may be granted.

6:19-CV-6876, ECF No. 10.[2]

Rather than appealing the Court's dismissal, Plaintiff waited approximately five months, until November 19, 2020, and essentially re-filed the same action as the current action, 6:20-CV-06996-CJS.  The Complaint stated, again, that Plaintiff is a Rastafarian who "adheres to [an] Ital diet," which he claimed had been denied to him at Five Points and Gouverneur.  The Complaint further indicated that Plaintiff received DOCCS kosher meals, but that they contained "beef, poultry, [and] dairy, amongst other animal products."  The Complaint again named Riley and McCoy as defendants, along Olney (whom Plaintiff identified as "DOCCS Nutritional Food Services Director"), Antonik (whom Plaintiff

---

[2] Four months after the dismissal, in October 2020, Plaintiff sent a letter to the Court, requesting copies of documents, in which he acknowledged that the action had been "dismissed in June on the Eighth day." 6:19-CV-06876-CJS, ECF No. 12.

identified as "DOCCS Mess Hall Director"), and Five Points Warden Matthew Thoms ("Thoms").

The Complaint did not reference Plaintiff's earlier lawsuit, which the Court finds odd, since Plaintiff was aware, from his prior lawsuit, that he should disclose whether he had begun any other lawsuits in state or federal court involving the same facts as this action.[3]  In any event, because of that omission, the Court failed to notice this action's relationship to the prior action.

On January 20, 2021, the Court issued an Order (ECF No. 7) granting Plaintiff's request for leave to proceed *in forma pauperis*, screening the Complaint pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A, and ordering that the claims for injunctive relief were dismissed as moot since Plaintiff had been released from DOCCS custody; that the claims against Olney and Antonik could proceed to service; that the claims against Riley would be dismissed with prejudice; and that the claims against McCoy and Thoms would be dismissed with prejudice unless Plaintiff filed an amended pleading setting forth a basis to find their personal involvement.

On March 8, 2021, Plaintiff filed an Amended Complaint, ECF No. 9.  The Court subsequently issued an Order (ECF No. 11) dismissing the action as against Thoms with prejudice and directing that the action could proceed as against McCoy, Olney, and Antonik.  In that regard, the Court indicated that the allegations against McCoy were "thin" in that they alleged only that Plaintiff had sent two letters to McCoy, but that they were sufficient to survive the screening process, although the Court indicated that it was

---

[3] *See*, 6:19-CV-06876-CJS, ECF No. 8 at p. 2.

expressing "no opinion as to whether Plaintiff's claims c[ould] withstand a properly filed motion to dismiss."

On October 7, 2021, McCoy, Antonik, and Olney filed answers to the Amended Complaint, and on April 28, 2022, they filed the subject Motion for Judgment on the Pleadings, ECF No. 25.  Defendants first maintain that this action is barred by res judicata, since it raises the same claims that were dismissed with prejudice in Plaintiff's prior action:

> Here, there can be no question that the facts alleged by Plaintiff in the Complaint in this action arise from the same operative facts alleged in 19-CV-6876-CJS. In his previous federal lawsuit 19-CV-6876-CJS, Plaintiff named Jeffrey McCoy, Allen Riley, Anthony Annucci and Mess Hall Director at Five Points Correctional Facility as Defendants and alleged that Defendants violated his right to religious freedom when they denied him meals in accordance with his religious belief. Docket No. 1 of 19-CV-6876-CJS. Upon screening, the Court dismissed Plaintiff's complaint with leave to file an Amended Complaint. Docket No. 7 of 19-CV-6876-CJS. Plaintiff then filed an Amended Complaint (Docket No. 8 of 19-CV-6876-CJS), and subsequently filed a motion to compel requesting injunctive relief. Docket No. 9 of 19-CV-6876-CJS. In his Amended Complaint, Plaintiff claimed that he adheres to Rastafarian dietary guidelines and alleged that despite his request to be given an Ital or nonvegan diet in conformance with his religious belief, he continued to receive meals made with animal products, including eggs, diary, poultry and beef. Docket No. 8 of 19-CV-6876-CJS. On June 8, 2020, the Court dismissed Plaintiff's Amended Complaint with prejudice for failure to state a claim upon which relief may be granted, and his motion to compel for injunctive relief was denied as moot. Docket No. 10 of 19-CV-6876-CJS.
>
> Then on October 19, 2020, Plaintiff filed his present *pro se* Complaint (Docket No. 1) and on March 8, 2021, Plaintiff filed his *pro se* Amended Complaint under 20-cv-06996-CJS. Docket No. 9. Plaintiff claims that he adheres to Rastafarian dietary guidelines, which prohibit animal products, and alleges that despite his request to be given an Ital or nonvegan diet in conformance with his religious belief, he continued to receive meals made with animal products, including eggs, diary, poultry and beef. Docket. No.

9. These allegations involve the same essential facts as the allegations in 19-CV-6876-CJS. In order to prove his allegations in 20-CV-06996-CJS, Plaintiff would have to reply on the same evidence as his claim in 19-CV-6876-CJS.

In addition, Plaintiff had ample opportunities in his previous federal lawsuit 19-CV-6876-CJS to present this Court with all of the claims arising from the same facts and events which he seeks to litigate again in this case. The Court in 19-CV-6876-CJS allowed Plaintiff to file an Amended Complaint as well. *See Cameron v. Church*, 253 F.Supp.2d 611, 619–20 (S.D.N.Y.2003) (quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir.1985)). Clearly, application of the doctrine of Res Judicata here would serve each of the purposes articulated by the Supreme Court in *Allen v. McCurry*, supra, 449 U.S. at 94, 101 S.Ct. 411: "[to] relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."

Finally, while several of the Defendants named in the Complaint in this action were not literally named as Defendants in Plaintiff's previous federal lawsuit, sufficient indicia of privity exist to require application of *res judicata* as to all Defendants.

ECF No. 25-2 at pp. 6-8.

Alternatively, Defendants contend that Plaintiff's claims are barred by the doctrine

of collateral estoppel, arguing that,

the dispositive factual and legal issues in Plaintiff's claims of deprivation of his constitutional rights in this 42 U.S.C. § 1983 action [are] identical to the allegations asserted in his prior Federal Court proceeding in 19-CV-6876-CJS. *See Parker v. Blauvelt Volunteer Fire Co., Inc.*, 93 N.Y.2d 343, 350 (1999). Indeed, Plaintiff raised an identical argument in his prior Federal Court proceeding in 19-CV-6876-CJS that Defendants violated his rights under the First Amendment when they did not provide him a diet consistent with his religious beliefs as a Rastafarian who adheres to an Ital diet and the Federal Court dismissed the Amended Complaint in 19-CV-6876-CJS with prejudice for failure to state a claim upon which relief may be granted. Docket 10 of 19- CV-6876-CJS. For *res judicata* purposes, dismissal for

7

failure to state a claim is deemed to be judgment on the merits. *See Ramirez v. Brooklyn Aids Task Force*, 175 F.R.D. 423 (E.D.N.Y. 1997), aff'd, 164 F.3d 619 (2d Cir. 1998); *see also, Wise v. Battistoni*, No. 92–CV–4288, 1992 WL 380914, at *2 (S.D.N.Y. Dec.10, 1992) (order dismissing pro se plaintiff's § 1983 claim for failure to allege state action was Rule 12(b)(6) dismissal for failure to state a claim). A different judgment in the present case involving Plaintiff's allegations of not providing him with an Ital diet "would destroy or impair right or interest already established on behalf of the Defendants in prior action." *Rivera v. Patnode*, 2012 U.S. Dist. LEXIS 40844, *14 (N.D.N.Y. 2012), quoting *D'Andrea*, 81 F. Supp. 2d at 446.

Furthermore, the prior federal court action afforded Plaintiff a full and fair opportunity to litigate whether he was denied of diet consistent with his religious belief as a Rastafarian who adheres to an Ital diet. In his prior federal lawsuit 19-CV-6876-CJS, Plaintiff was given the opportunity to submit an Amended Complaint pursuant to the Federal Court's Order dated Feb. 28, 2020. Docket No. 7 of 19-CV-6876-CJS. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend").

Moreover, in the present case, Plaintiff named Matthew Thoms, Jeffrey McCoy, Christina Olney, and M. Antonik as Defendants who did not provide him with meals consistent with his religious belief. Docket No. 9 of 20-CV-6996-CJS. In his previous federal lawsuit 19-CV-6876-CJS, Plaintiff named Jeffrey McCoy, Allen Riley, Anthony Annucci and Mess Hall Director at Five Points Correctional Facility as Defendants who violated his right to religious freedom when they denied him meals in accordance with his religious belief. Docket No. 8 of 19-CV-6876-CJS. He named Jeffrey McCoy in both Federal Court proceedings 20-CV-6996-CJS and 19-CV-6876-CJS. Under these circumstances, where all Defendants are alleged to have been participants in denying meals of religious belief, Plaintiff had a prior opportunity to raise all claims related to the disputed facts. Accordingly, [a] sufficiently close relationship exists between the Defendants to preclude Plaintiff from proceeding against any of them in this subsequent, separate action. Hence, because Plaintiff's Amended Complaint in 19-CV-6876-CJS was dismissed with prejudice for failure to state a claim upon which relief may be granted, he is precluded, in the present case, from asserting that same actions by Defendants violated his right to religious freedom. Defendants respectfully

8

submit, therefore, that Plaintiff's claims are barred by the doctrine of collateral estoppel.

ECF No. 25-2 at pp. 11-13.

As additional grounds for dismissal of the Amended Complaint, Defendants maintain that claims against Defendants in their official capacities for damages are barred by the Eleventh Amendment; that Plaintiff's claims for injunctive relief, requiring DOCCS to provide an Ital diet, are now moot since he is no longer in DOCCS custody; and that the Amended Complaint fails to state actionable claims against Olney and Antonik. *See*, ECF No. 25-2 at pp. 13-17.   Regarding Olney and Antonik, Defendants assert that the Amended Complaint fails to plausibly allege their personal involvement in the alleged denial of Plaintiff's religious-freedom rights.   More specifically, as to Olney, Defendants argue that the pleading indicates only that Plaintiff sent a complaint to Olney, but does not allege "where the letter was sent, what it said, or how it was sent."   Defendants maintain that the Complaint is similarly deficient as to Antonik, since it does not even allege that Plaintiff wrote to her. *See*, ECF No. 25-2 at p. 16 ("The Amended Complaint does not allege any involvement of Defendant Antonik as well.  Plaintiff has not indicated that he even wrote a letter or complaint to Defendant Antonik and sent it to a specific address or rather how Defendant Antonik has any knowledge of the fact.").   Additionally, Defendants insist that an official's "mere receipt of a letter complaining about unconstitutional conduct is not enough to give rise to personal involvement" in any event.

The *pro se* Plaintiff, who was released from DOCCS custody after commencing this action, filed a document in opposition to Defendants' motion. *See*, ECF No. 26. However, Plaintiff's response does not address any of the legal issues raised by

9

Defendants' motion.  For example, the response does not address the doctrines of *res judicata* and collateral estoppel, nor does it attempt to explain how the Amended Complaint plausibly pleads personal involvement by Olney and Antonik.  Instead, Plaintiff asserts that, "The motion should be denied because the Plaintiff was not deposed and the Plaintiff is still seeking redress for the wrongdoing described in the civil complaint." Otherwise, Plaintiff's response consists of a brief reiteration of his claim, namely, that he believes Defendants are liable to him since he was not given an Ital diet while at Five Points and Gouverneur.

## DISCUSSION

### Plaintiff's *Pro Se* Status

At the outset the Court notes that it has construed Plaintiff's *pro se* submissions liberally to raise the strongest arguments that they suggest. *See, Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest.") (collecting cases).

### Rule 12(c) Legal Principles

Defendants have moved for judgment on the pleadings under Rule 12(c), and standards applicable to such a motion are clear: ""In deciding Rule 12(c) motions, we employ the same standard applicable to Rule 12(b)(6) motions to dismiss, accepting all factual allegations in the Complaint as true and drawing all reasonable inferences in the

nonmoving party's favor." *Hofmann v. Long Island Univ.*, No. 22-393-CV, 2024 WL 3262819 (2d Cir. July 2, 2024) (citation omitted).

> As with Rule 12(b)(6) motions, Rule 12(c) motions generally are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings. *See* Fed.R.Civ.P. 12(c). A court may, without converting the motion into one for summary judgment, consider documents that are attached to, incorporated by reference in, or integral to the complaint; and it may also consider matters that are subject to judicial notice. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir.2002); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

*Byrd v. City of New York*, No. 04-1396-CV, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005).

Plaintiff has not submitted a substantive response to Defendants' motion. Nevertheless, the Court may not simply grant Defendants' motion by default, but, instead, must determine whether Defendants are entitled to the relief they seek as a matter of law. *See, e.g., Beter v. Baughman*, No. 24-CV-0079 (GHW) (RFT), 2024 WL 2332099, at *1 (S.D.N.Y. May 6, 2024) ("Plaintiff's decision not to oppose Schoen's motion does not automatically mean that the motion should be granted[.] . . . Instead, in deciding an unopposed motion to dismiss, a court is to assume the truth of a pleading's factual allegations and test only its legal sufficiency. A court evaluates an unopposed motion based on its own reading of the pleading and knowledge of the law.") (citations and internal quotation marks omitted), report and recommendation adopted, No. 1:24-CV-79-GHW-RFT, 2024 WL 2325884 (S.D.N.Y. May 21, 2024).

<u>Official-Capacity Claims for Damages and Claims for Injunctive Relief</u>

Plaintiff has sued Defendants in both their official capacities and individual capacities, and seeks both money damages and injunctive relief.  However, the Eleventh Amendment bars claims for money damages against state officials sued in their official capacities.  *See, Tripathy v. McKoy*, 103 F.4th 106, 116 (2d Cir. 2024) ("[Plaintiff's] request for damages against Defendants in their official capacities is barred by the Eleventh Amendment. *See Davis v. New York*, 316 F.3d 93, 101–02 (2d Cir. 2002). Tripathy therefore may seek only individual-capacity damages against Defendants[.]"). Accordingly, the claims against Defendants in their official capacities for money damages are dismissed.

Moreover, since Plaintiff is no longer in the custody of DOCCS, his claims for injunctive relief requiring DOCCS to provide him with an Ital diet are now moot, and are also dismissed. *See, Tripathy v. McKoy*, 103 F.4th at113, 116 ("A person's 'transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.' *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023).  . . . Tripathy's equitable claims were mooted by his release from prison. *See Salahuddin*, 467 F.3d at 272.").

<u>Res Judicata/Collateral Estoppel</u>

A defendant may properly use a Rule 12(c) motion to raise the defenses of *res judicata* and collateral estoppel, provided that the relevant facts are evident from the

pleading or from other documents of which the Court may take notice. *See, U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98 CIV 3099 JGK, 2001 WL 300735, at *23 (S.D.N.Y. Mar. 27, 2001) ("A collateral estoppel defense, however, may be analyzed on a Rule 12(c) motion where all the relevant facts are set forth in the complaint and in matters of which the Court may take judicial notice.") (citations omitted).  In this regard,

> even though the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in Plaintiff's favor, issue preclusion "will nonetheless bar a plaintiff's claim when [a] plaintiff's 'factual allegations have been decided otherwise in a previous litigation.'" *Poindexter v. Cash Money Records*, No. 13 Civ. 1155(RWS), 2014 WL 818955, at *3 (S.D.N.Y. Mar. 3, 2014) (quoting *Jacobs v. Law Offices of Leonard N. Flamm*, No. 04 Civ. 7607(DC), 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005)); *cf. Linden Airport Mgmt. Corp. v. N.Y.C. Econ. Dev. Corp.*, No. 08 Civ. 3810(RJS), 2011 WL 2226625, at *3 (S.D.N.Y. June 1, 2011) ("[I]t is well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion."). In such instances, dismissal is appropriate when "'it is clear from the face of the complaint, and consideration of matters which the court may take judicial notice of, that the plaintiff's claims are barred as a matter of law.'" *Linden Airport Mgmt. Corp.*, 2011 WL 2226625, at *3 (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir.2000)); *U.S. Fidelity & Guar. Co. v. Petroleo Brasileiro S.A.*, No. 98 Civ. 3099(JGK), 2001 WL 300735, at *23 n. 17 (S.D.N.Y. Mar. 27, 2001) (relying on cases resolving Rule 12(b)(6) motions to identify that "[a] collateral estoppel defense [ ] may be analyzed on a Rule 12(c) motion where all the relevant facts are set forth in the complaint and in matters of which the Court may take judicial notice").

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 360 (S.D.N.Y. 2014).

   In particular, when evaluating a defendant's arguments concerning *res judicata* and collateral estoppel in the Rule 12(b) or Rule12(c) context, a court may consider

documents that were filed in the plaintiff's prior lawsuit, including the Court's own orders. *See, e.g., Byrd v. City of New York*, No. 04-1396-CV, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005) ("In this case, the District Court relied on materials outside the pleadings— in particular, the Stipulation and Order of Settlement and Discontinuance With Prejudice, dated January 8, 2001, and the Release, sworn to January 16, 2001. It did so without stating a basis for considering these materials as part of a Rule 12(c) motion or giving the notice ordinarily required when a motion is converted to one for summary judgment. Nonetheless, it is plain that the District Court would have been permitted to consider at least the Stipulation of Settlement as part of Rule 12(c) motion to dismiss. The Stipulation of Settlement was filed in connection with Byrd's prior lawsuits and was so ordered by the court. That document is thus subject to judicial notice, and we have often held that material that is a matter of public record may be considered in a motion to dismiss.") (citations omitted).

Turning to the merits of Defendants' motion, a review of the pleadings in this action, and of the documents filed in Plaintiff's prior action, indicates that the claim in the two actions is the same and arises out of the same events at Five Points and Gouverneur, and that the first action was dismissed with prejudice on the merits, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Under similar circumstances, another District Judge in this Circuit analyzed the effect of a prior dismissal with prejudice of a *pro se* plaintiff's claims under 28 U.S.C § 1915(e)(2)(B)(ii) as follows:

> Notwithstanding the liberal construction afforded to *pro se* pleadings, there are limits to how often a court can be asked to review the same allegations against the same parties or their privies. The doctrines of *res judicata* and

collateral estoppel limit such review. *See Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (res judicata); *Johnson v. Watkins*, 101 F.3d 792, 794-95 (2d Cir. 1996) (collateral estoppel). *Res judicata* prevents a party from re-litigating issues that were or could have been brought in a prior action. *See, e.g., Brown v. Felsen*, 442 U.S. 127, 131, 99 S. Ct. 2205, 2209, 60 L.Ed. 2d 767, 772 (1979). Under *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (citations and internal quotation marks omitted). A district court has not only the power but the obligation to dismiss complaints *sua sponte* on *res judicata* grounds when the litigation history triggers it. *Salahuddin*, 992 F.2d at 449; *Krepps v. Reiner*, 377 Fed.Appx. 65, 66-67 (2d Cir. 2010) (Courts have the authority to raise *res judicata* issues *sua sponte*).

Similarly, "[c]ollateral estoppel, like the related doctrine of *res judicata*, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 58 L.Ed. 2d 552 (1979). Additionally, the doctrines of *res judicata* and collateral estoppel apply to *pro se* litigants. *Austin v. Downs, Rachlin, & Martin Burlington St. Johnsbury*, 270 Fed.Appx. 52 (2d Cir. 2008); *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205-06 (2d Cir. 2002).

Here, as the Court can best discern, Plaintiff's claims against Defendants arise out of the same nucleus of facts that he alleged in [his prior action which was] dismissed with prejudice on the merits. *See, e.g., Berrios v. N.Y. City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) ("[D]ismissal for failure to state a claim [under section 1915(e)(2)(B)(ii) ] is a final judgment on the merits and thus has res judicata effects"). Because a final judgment on the merits of a case will bar any subsequent litigation by the same parties concerning the transaction out of which the first action arose, Plaintiff's Section 1983 claims cannot proceed. Indeed, "[o]nce a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties, or those in privity with the parties, concerning the transaction or series of connected transactions out of which the first action arose." *Manko v. Steinhardt*, 12-CV-2964, 2012 WL 2367092, *2 (E.D.N.Y. June 20, 2012). Accordingly, the 1983 claims against Defendants

are precluded and the Complaint is dismissed with prejudice [pursuant] to 28 U.S.C. § 1915(e)(2)(B)(ii).

*Dixon v. Minglon*, No. 17-CV-1195(JS)(AKT), 2017 WL 3588939, at *2–3 (E.D.N.Y. Aug. 18, 2017) (emphasis added); *see also, Carpenter v. Corr. Officer "John DOE" of the Nassau Cnty. Sheriff's Dep't*, No. 15CV6685SJFAKT, 2016 WL 1448648, at *3 (E.D.N.Y. Apr. 12, 2016) ("Since a final judgment dismissing plaintiff's Section 1983 claims with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) for failure to state a claim for relief was entered in the prior action on November 5, 2015, and the prior action involved the same parties and the same claims as this action, plaintiff's Section 1983 claims are barred by the doctrine of res judicata.").

The Court agrees with the foregoing analysis, and finds that it requires the dismissal of Plaintiff's claim against McCoy, on grounds of *res judicata*, since McCoy was a defendant in the earlier action, which raised the identical claim and was dismissed with prejudice. Accordingly, Defendants' motion to dismiss is granted as to McCoy, on the grounds of *res judicata*.

The issue is less clear as to Olney and Antonik, since they were not named parties to the earlier action. In that regard, Plaintiff's original complaint in the first action sued "Mess Hall Director at Five Points," apparently referring to Antonik. However, Plaintiff's amended pleading in the first action omitted any reference to "Mess Hall Director at Five Points," and the Court's Decision and Order dismissing that action with prejudice states, in pertinent part, that, "Plaintiff names as Defendants in this action Chairman Allen Riley, Commissioner Anthony Annucci and Deputy Commissioner for Programs and Services

16

Jeff McCoy." 6:19-CV-06876 CJS, ECF No. 10 at p. 3.   Therefore, Antonik was not technically a party to the earlier action when it was dismissed.

Consequently, the Court determines that Olney and Antonik would only be entitled to dismissal on the grounds of *res judicata* and/or collateral estoppel if they were "in privity" with the parties in the first action.   On this point, government officials sued in their official capacities are deemed to be in privity with other officials of the same government who were sued in their official capacities in the prior action.   *See, e.g., Kneitel v. Hynes*, No. 11-CV-2883 NGG VVP, 2011 WL 2747668, at *4 (E.D.N.Y. July 13, 2011) ("It is well established that government officials sued in their official capacity are considered to be in privity with each other, ... such that a judgment for an official of a government agency precludes a subsequent action on the claim against an official of the same government agency." *Shekhem' El–Bey*, 464 F.Supp.2d at 334 (citing *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03, 60 S.Ct. 907, 84 L.Ed. 1263 (1940) and collecting cases).").   Accordingly, to the extent Olney and Antonik are sued in their official capacities, the official capacity claims are barred by *res judicata*, since in the first action McCoy was also sued in his official capacity.   *See*, 6:19-CV-06876 CJS, ECF No. 8 at p. 2.

On the other hand, government officials sued in their individual capacities are generally not deemed to be in privity with previously-sued officials. *See*, § 4458 Government and Official Litigation, 18A Fed. Prac. & Proc. Juris. § 4458 (3d ed.) ("The relationships between a government and its officials justify preclusion only as to litigation undertaken in an official capacity. Thus a judgment against a government or one government official does not bind a different official in subsequent litigation that asserts a

17

personal liability against the official[.]") (citations omitted).  Consequently, since Olney and Antonik were not parties to the prior action and are not in privity with the defendants in that action, they may not assert the defenses of *res judicata* or collateral estoppel to bar the claims against them in their individual capacities.  Accordingly, Defendants' motion is denied insofar as it seeks dismissal as against Olney and Antonik in their individual capacities based on *res judicata* and/or collateral estoppel.

<u>Failure to State a Claim</u>

Defendants alternatively contend that the Amended Complaint fails to state actionable claims against Olney and Antonik, since it does not plausibly allege that they were personally involved in the alleged denial of a religious diet to Plaintiff.  The applicable legal principles are clear:

> To survive a motion to dismiss [for failure to state a claim], a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and

18

internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

Here, beginning with Antonik, Defendants argue that the pleading fails to allege any basis to find personal involvement in a constitutional violation.  In this regard, as far as establishing a factual basis to assert a claim against Antonik, the Amended Complaint states only the following:

> Defendant Antonik violated the Plaintiff David Michael Trotman Jr.'s First Amendment rights under the United States Constitution when he displayed deliberate indifference or intentional infliction of emotional distress when he responded via facility correspondence with illogical or nonsensical responses regarding the Plaintiff's diet per religion.  This defendant has caused pain suffering mental anguish and severe emotional distress.

Amended Complaint, ECF No. 9 at p. 3.  The Court agrees that this fails to plausibly plead a violation of Plaintiff's constitutional rights by Antonik.

More specifically, the vague and conclusory assertion that Antonik's response, to some unspecified complaint by Plaintiff about his "diet per religion," was "illogical or nonsensical" does not plausibly allege Antonik's awareness of, let alone her personal involvement in, a violation of Plaintiff's federal constitutional or statutory rights. *See, e.g., Cijka v. Baker*, No. 2:20-CV-168, 2022 WL 813832, at *6 (D. Vt. Feb. 11, 2022) (Allegation that the defendant's "responses to Plaintiff's questions were 'vague' and she 'had no answers' to Plaintiff's 'in depth questions'" was insufficient to state defendant's personal involvement), report and recommendation adopted, No. 2:20-CV-168, 2022 WL 813922 (D. Vt. Mar. 17, 2022); *see also, Taylor v. Small*, No. 22-CV-2762 (NSR), 2024 WL 1605066, at *5 (S.D.N.Y. Apr. 11, 2024) ("A supervisory official's denial of a grievance can suffice to show personal involvement for purposes of Section 1983, but only where the supervisor's response is detailed and specific, such that it provides some indicia of knowledge or familiarity with the inmate's condition and fails to remedy the wrong.  . . . Here, Plaintiff merely alleges that Supt. Russell received and denied her grievances, which is insufficient to support an Eighth Amendment violation.  Plaintiff does not allege, for example, that Supt. Russell's denials were sufficiently detailed that when read objectively demonstrated that he was on notice of the existence of constitutional violation. Accordingly, the claims against Supt. Russell are deemed dismissed due to the lack of personal involvement.") (citations and internal quotation marks omitted); *Fortunato v. Bernstein*, No. 12 CIV. 1630 AT, 2015 WL 5813376, at *6 (S.D.N.Y. Sept. 1, 2015) ("Although some courts have found personal involvement where a supervisor's actions consist of more than the mere receipt of grievances, such decisions have required factual

allegations of involvement more specific than Plaintiff's vague contention here that Bernstein 'wrote statements' as part of the grievance process.") (citation omitted); *Sterling v. Akinyombo*, No. 20-CV-10804 (CS), 2022 WL 2657223, at *5 (S.D.N.Y. July 8, 2022) ("Any allegation that Akinyombo, by virtue of his response to the letter, became personally involved in failing to provide adequate medical care is conclusory and insufficient to establish that, through his own actions, he violated Plaintiff's constitutional rights, as there are also no facts showing Akinyombo made any actual medical decisions.") (citations and internal quotation marks omitted).  Accordingly, Plaintiff's claim against Antonik is dismissed.

Defendants also contend that the Amended Complaint similarly fails to plausibly allege Olney's personal involvement in the alleged violation of Plaintiff's rights.  In this regard, the Amended Complaint contains the following allegations concerning Olney:

> Defendant Christina Olney is the Nutritional Food Services Director located in Rome, New York & is legally responsible for the operation of nutritional services religion included.
>
> ***
>
> In the third quarter of 2019 the Plaintiff wrote a complaint to Christina Olney.
>
> ***
>
> Defendant Christina Olney violated the Plaintiff's First Amendment right under the United States Constitution when she did not remove animal products from the Plaintiff per diet per religion.  Nutritional services is able to provide an Ital diet plan and by not providing that diet per religion she violated the Plaintiff's First Amendment rights under the United States Constitution causing pain and suffering mental anguish and severe emotional distress.

ECF No. 9 at pp. 1-3.

In addition to the Amended Complaint, the Court considers documents that are incorporated by reference and integral to the pleading, consisting of communications between Plaintiff and various DOCCS officials concerning his requests for various changes to his diet, which are contained in Defendants' Rule 26 Disclosure, ECF No. 23. Such documents indicate, for example, that before Plaintiff requested an Ital diet, he specifically indicated to DOCCS that a Kosher cold alternative diet ("CAD") was acceptable to him. *See*, ECF No. 23 at pp. 19, 23, 25.  The documents further show that Plaintiff later changed his mind about the CAD diet, and indicated that he wanted to receive "the regular meal with the meatless tray." *Id*. at p. 68.  The documents further show that Plaintiff then objected to receiving the meatless alternative diet, and requested meals without any animal products. *See, id*. at p. 86.  Although, in a grievance that Plaintiff filed on August 5, 2019, he stated that he was "Rastafarian and adheres to an Ital diet which is mostly vegan." *Id*. at 113 (emphasis added).

The Court also considers a document that was attached to Plaintiff's original Complaint filed in his first action, 6:19-CV-06876 CJS, which is apparently Olney's response to Plaintiff's communication to her, referenced in the Amended Complaint. Specifically, the letter from Olney to Plaintiff, dated January 14, 2020, states, in pertinent part:

> Dear Mr. Trotman:  This is in response to your request for changes to the kosher diet.  Changes to the kosher meal for purpose of making it an Ital diet (mostly vegan) is not approved.  Be advised, the department does offer a meatless alternative menu.   If you have further concerns, it is

recommended you contact the food service supervisor.  Sincerely, Christina Olney, Director of Nutritional Services.

6:19-CV-06876 CJS, ECF No. 8 at p. 12.

Finally, in considering whether the Amended Complaint states a claim against Olney, the Court also takes judicial notice of the fact that, while Plaintiff maintains that the Rastafarian Ital diet should contain no animal products, there is significant disagreement as to what constitutes an acceptable Rastafarian Ital diet. *See, e.g., Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988) (Purporting to summarize the beliefs of Rastafarianism, including "that meat should not be eaten."); *see also, Njie v. Dorethy*, 766 F. App'x 387, 390 (7th Cir. 2019) ("Many Rastafarians follow an Ital diet, but individuals' dietary restrictions vary. Njie restricts himself to organic, non-canned foods without preservatives, and he avoids meat and foods containing lactose."); *Benjamin v. Coughlin*, 708 F. Supp. 570, 571 (S.D.N.Y. 1989) ("Many Rastafarians follow what is known as an "Ital" diet, abstaining from meat, liquor, and caffeine, and eating only natural foods, although there are variations in these practices."), *aff'd*, 905 F.2d 571 (2d Cir. 1990).  Indeed, in *Benjamin v. Coughlin*, the district court wrote the following concerning the Ital diet:

Ital symbolizes a belief in life and an avoidance of symbols of death. Individual dietary practices vary widely among Rastafarian individuals and sects both inside and outside prison. In general, Rastafarians do not eat meat, and almost universally refrain from eating pork. Most Rastafarians abstain from alcohol and caffeine. Some Rastafarians do not eat fish, and some refuse dairy products. Some refrain from eating any foods that have been processed, particularly canned food, believing that the can symbolizes a coffin, or death. Some Rastafarians refuse to eat vegetables that have been cooked for more than a few minutes, believing that overcooking

destroys the food's natural value. Rastafarians also object to vegetables that have been treated with non-organic pesticides or fertilizers.

Some Rastafarians will only eat food that is prepared and served in pots and bowls made of natural materials: more specifically, clay pots and calabash bowls. Some Rastafarians will eat only food that they have prepared themselves. Others refuse food that has been prepared by a woman during her menstrual period. Some of the inmates who testified eat meat, dairy products, fish, canned foods from the commissary, and bread made from processed flour.

Whenever pork is served, DOCS provides a meat substitute to all inmates to accommodate the religious requirements of Jewish and Muslim prisoners. No such substitute is offered when other meats are served. They also offer a kosher food program at Green Haven Correctional Facility, and a neutral diet at other facilities to inmates who have been in the Green Haven program. Most of the vegetables served in DOCS institutions are canned or frozen, because they are more cost-effective and because fresh vegetables are not available all year. Vegetables are prepared by steaming for a maximum of fifteen minutes.

The use of clay or calabash pots and bowls is impracticable because clay is breakable, and it violates New York food preparation regulations which forbid the use of wooden working surfaces other than hard maple. Porous materials can retain and breed harmful bacteria.

It would be both expensive and a severe administrative burden for defendants to provide Rastafarian inmates with a diet containing only natural foods and nutritionally adequate meat substitutes.

Other prisoners understandably resent special treatment that is given to any group, and the possibility of tension and confrontation is particularly troublesome at mealtime, which is often the only time the entire prison population is together.

Defendants provide Orthodox Jewish prisoners with kosher or neutral meals. They provide special meals during Ramadan, and meat substitutes so that Muslim prisoners can follow their religious proscription against pork. To that extent, they do not appear "neutral" as between Jews and Muslims on the one hand and Rastafarians on the other. But the inequality of treatment, if it is perceived as such, reflects the fact that it would be much

more difficult to accommodate the Rastafarians because their definitions of an Ital diet are so varied. The complex of dietary restrictions that plaintiffs described would impose undue financial and administrative burdens on defendants to provide an Ital diet that met with the religious views of every Rastafarian inmate.

Plaintiffs do have alternative means of exercising the right: they may receive food from the outside through the prison package rooms, and they may buy food at the prison commissary. They may also abstain from eating any food provided in the mess hall that offends their religious beliefs. Although it may not be acceptable to all Rastafarians, those who do not reject all dairy products may obtain a nutritionally adequate "ovo-lacto" (i.e., including eggs and dairy products) diet even abstaining from all meat, fish and poultry. *See Udey v. Kastner*, 805 F.2d 1218 (5th Cir.1986) (prisoner's request for a natural food diet, based on sincerely held beliefs, refused on the basis that it would create undue costs and administrative burdens, and have a potentially disruptive effect on prison discipline).

*Kahane v. Carlson*, 527 F.2d 492 (2d Cir.1975), held that the state must provide kosher meals to Orthodox Jewish inmates. Factually, there were few Orthodox Jewish inmates in the custody of DOCS. Further, Kahane sought meals that complied with the laws of Kashruth, which are more well-defined than the dietary practices described by plaintiffs. Defendants' practices here do not run afoul of *Kahane*, read in the light of *Turner* and *O'Lone*, nor do they impermissibly infringe on plaintiffs' First Amendment or Equal Protection rights.

*Benjamin v. Coughlin*, 708 F. Supp. 570, 575–76 (S.D.N.Y. 1989), aff'd, 905 F.2d 571 (2d Cir. 1990).

Against this backdrop, the Court finds that Plaintiff has not pleaded an actionable claim against Olney.  The Amended Complaint makes only a conclusory assertion that Olney "violated the Plaintiff's First Amendment right under the United States Constitution when she did not remove animal products from the Plaintiff per diet per religion." However, Plaintiff has not provided a copy of the actual letter that he sent to Olney, nor

25

has he alleged what it said, except insofar as he vaguely implies that it involved "diet per religion."   Consequently, there is no indication of how, if at all, Plaintiff explained the religious significance of his request to Olney.  Nor, from Olney's response, does it appear that she understood that Plaintiff's request to change the diet involved a religious requirement or necessity, as opposed to some personal preference of Plaintiff.  After all, Plaintiff had previously agreed to accept both the CAD diet and the regular diet with meatless alternative tray, both of which contain some animal products, despite claiming to be Rastafarian.

At most, the Amended Complaint indicates that Plaintiff, who *now* claims that he should have been provided meals containing absolutely no animal products, asked Olney to adjust the CAD kosher meal to make it "mostly vegan," and that Olney responded by indicating that she could not alter the established CAD diet, but that Plaintiff could request a "meatless alternative menu" by "contact[ing] the food service supervisor."  To the extent Plaintiff now claims that his religious rights were violated insofar as he was not given meals that were *completely free* of animal products,[4] there is no indication that he asked Olney to provide him with such meals, or that he explained to Olney that such meals were a requirement of his religious beliefs.  Such facts do not plausibly allege that Olney was personally involved in an alleged constitutional violation.  Accordingly, the claim against Olney is dismissed.

---

[4] See, Amended Complaint (ECF No. 9) at ¶ ¶ 12, 25.

<u>Further Leave to Amend is Denied</u>

The *pro se* Plaintiff has not requested further leave to amend, and in any event, the Court denies such relief.   The Court has already explained to Plaintiff on several occasions the necessity of pleading personal involvement, and between the four complaints that he filed in his two actions and his response in opposition to Defendants' motion, he has had five opportunities to plead plausible claims.   Consequently, further leave to amend is denied as futile, and the claims are dismissed with prejudice.

CONCLUSION

Defendants' Motion to Dismiss (ECF No. 25) is granted and this action is dismissed with prejudice.   The Clerk is directed to close this action.   The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Decision and Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is therefore denied. *Coppedge v. United States*, 369 U.S. 438 (1962).   Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Charles J. Siragusa
United States District Judge

DATED:        August 12, 2024
              Rochester, NY

27